### NEWMAN and Others *v.* WRIGHT.

This was a suit for the price agreed to be paid for a military substitute. The judges being equally divided in opinion upon the questions presented, the judgment of the court below was affirmed by operation of law.

APPEAL from the *Marion* Circuit Court.

GREGORY, J.—This was an action brought by *Wright* against *Newman* and eight others, to recover the sum of $1,075, the price agreed to be paid by the defendants for *Wright's* services in procuring a substitute for *Andrews,* one of the defendants. The defendants had organized themselves into a "draft insurance company," and *Andrews,* one of their number, having been drafted, they selected an agent from among their number to procure a substitute for him. A contract was made with *Wright* for a substitute for $1,075. The defense was, that by the contract *Wright* was to furnish *Andrews* with a certificate of exemption on or before the 16th of *March,* the day set for the examination of the drafted men from the third ward of the city of *Indianapolis,* and that the certificate was not furnished at that time, but some days later.

The main question involved arises on instructions given, and instructions refused. The court below instructed the jury as follows, over the objection and exception of the appellants:

1. "If the jury believe from the evidence that the defendants agreed to pay plaintiff the sum of $1,075 for procuring *Andrews* to be exempted from military service as a drafted man, and that plaintiff did procure him to be exempted in a reasonable time thereafter, then the plaintiff should recover, unless the parties, when the contract was made, saw fit to make the time of procuring such exemption an essential part of the contract. It was not an essential part thereof, unless the parties, at the time the contract was made, so regarded and treated it; and in determining whether the parties so regarded it, the jury may consider the subject matter of the contract, and the conduct and language of the parties at the time and after the contract was made.

2. "The complaint in this case alleges that the plaintiff agreed to procure the exemption of the defendant *Andrews* from service as a drafted man by procuring a substitute for him, to be received, credited and accepted in his stead by the proper military authorities, and that he did procure such substitute, who was mustered in, accepted and received in the place of *Andrews*, and procured from the proper military authorities a certificate of such exemption. Under this complaint, it is incumbent on the plaintiff to show a substantial compliance with the contract set out in the complaint, and that compliance must have been accomplished within such time as to effect the purpose the parties had in view when the contract was made. If the plaintiff has not thus complied with his part of the contract, he cannot recover; and it follows that a substantial compliance by plaintiff will entitle him to recover. His case must be made out by a preponderance of evidence.

3. "If the evidence conflicts, you will reconcile it if pos-

sible; if not reconcilable, you will accept such part as you credit.

4. "The mustering in of *Simpson*, at *Cairo*, operated as a release of *Andrews* from the date of the acceptance and muster, and from that date he was the legal substitute of *Andrews*, and as such bound to do military service for the *United States.*"

The instructions refused embraced the other theory of the case, that it was the furnishing the certificates, the evidence of the muster-in of *Simpson* at *Cairo*, which exempted *Andrews* from military service, and not the fact itself.

The act of Congress provides "that any person drafted into the military service of the *United States* may, before the time fixed for his appearance for duty at the draft rendezvous, furnish an acceptable substitute, subject to such rules and regulations as may be prescribed by the Secretary of War." U. S. Statutes at Large, 1863-4, § 5, p. 6. The rules and regulations could only relate to the acceptance of the substitute, for it would be a fraud on the rights of the drafted man for the government to accept a substitute and muster him into her service, and then, by rules and regulations, deprive the former of the benefit of such substitution.

I think, under the act of Congress, that when the *United States* accepted *Simpson* as the substitute of *Andrews*, and mustered the former into the military service, that the latter was thereby discharged. The presumption in law is that the government will do her duty to her citizens.

There are some minor questions argued by counsel, but I do not think they are properly presented by the record so as to entitle them to the consideration of this court.

I think the judgment ought to be affirmed.

ELLIOTT, C. J.—In this case I fully concur in the foregoing opinion of GREGORY, J., and therefore am of the opinion that the judgment should be affirmed.

FRAZER, J.—There was evidence tending to show that by the contract the plaintiff undertook to furnish not only a

substitute for *Andrews*, but a certificate of the fact before *March* 16th, the day fixed for *Andrews* to be examined as to his fitness for military service, and this was not done until afterwards. It also appeared in evidence that by the actual practice of the government, a drafted man, after being mustered in and sent from the State, would not be released from service though a substitute had been actually furnished before he was mustered. The court below refused the following instruction:

"If the jury believe from the evidence that the plaintiff, in consideration of defendants' promise to pay him $1,075 therefor, agreed on the 11th day of *March*, 1865, to procure a certificate from the proper military authority that a substitute for *Lyman N. Andrews* had been mustered into the naval service, and to have said certificate accepted by the Provost Marshal, and said *Andrews* released from the draft by said Provost Marshal, before the time fixed for the examination of drafted men from the third ward in the city of *Indianapolis*, to-wit: the 16th day of *March*, 1865; and if said *Wright* failed to procure such certificate, and failed to have it accepted by the Provost Marshal, and failed to have said *Andrews* released by the Provost Marshal from the draft by the 16th day of *March*, 1865, then they will find for defendants."

I am of opinion that this instruction ought to have been given, and that the judgment below should therefore be reversed. As a case can never be authority where this court is equally divided, as now, I do not deem it necessary to give the reasons upon which my opinion is founded. Indeed I think that as a general rule, it is better in such cases that the judges should be satisfied with merely fulfilling the requirement of the statute, and give only a written opinion upon each point in the case.

RAY, J.—I think the appellant had the power to contract not only for a legal right to exemption from the military service, but that such right should be recognized by the proper

officer of the government before a time fixed. Such an issue was tendered by the evidence, and should have been distinctly submitted to the jury by giving the instruction on that point asked by the appellant.

The government had a perfect right to determine by proper regulations when, and under what limitations, the acceptance of a substitute should discharge a drafted man, and both parties, having contracted in view of such regulations, are bound by them. In my judgment, this case should be reversed for the refusal to give the instruction asked by the appellants, and because the finding is not sustained by the evidence.

*J. T. Dye* and *A. C. Harris,* for appellants.

*A. G. Porter, B. Harrison* and *W. P. Fishback,* for appellee.